## STATE LIFE INS. CO. v. ALLISON.

(Circuit Court of Appeals, Fifth Circuit. November 30, 1920.)

No. 3585.

1. **Insurance ⊂⟫455—Death in army from exploding shell held from accidental means; "bodily injury through external, violent, and accidental means."**

   The death of an insured, caused by his being struck by a piece of shrapnel from an exploded shell while engaged in battle as a soldier in the United States army, *held* to have resulted "from bodily injury sustained and effected directly through external, violent, and accidental means," within the terms of the policy.

2. **Insurance ⊂⟫455—Death by chance from hazard of occupation "accidental."**

   If an accident policy contains no provision excepting such hazards, and by chance, without the design, consent, or co-operation of the insured, he is injured or killed as a result of a hazard incident to his occupation, his injury or death properly may be said to have been caused by accidental means.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accident—Accidental.]

3. **Insurance ⊂⟫455—Death "accidental" where chance determines the person killed.**

   Though the means whereby a personal injury or death is caused were put into operation with the design or intention of injuring or killing one or more persons, if chance determines what particular person or persons are injured or killed in consequence of the use of those means, as to a person so injured or killed, without his fault, consent, or co-operation such means are to be regarded as accidental.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Action at law by Mrs. Carrie Daily Allison against the State Life Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

J. T. Stokely and Frank Dominick, both of Birmingham, Ala. (Stokely, Scrivner & Dominick, of Birmingham, Ala., and Chas. F. Coffin, of Indianapolis, Ind., on the brief), for plaintiff in error.

Erle Pettus, of Birmingham, Ala., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. This was an action by the defendant in error, the beneficiary named in a policy issued January 3, 1916, whereby the plaintiff in error (herein referred to as the insurer) insured the life of Jack Stewart Allison in the sum of $5,000, and further obligated itself as shown by the following provision contained in the policy:

### "Double Indemnity.

"During the premium-paying period of this policy and excluding any time while the same may be in force as extended insurance, all premiums having been duly paid, and this policy being then in force, in the event of the death of the insured resulting from bodily injury, sustained and effected directly through external, violent, and accidental means (murder or suicide, sane or insane, not included), exclusively and independently of all other causes,

provided such death shall occur within ninety (90) days from the date of the accident, the company will pay to the beneficiary or beneficiaries hereunder, in addition to the amount otherwise due, under this policy, the sum of five thousand dollars."

The death of the insured having occurred, the insurer, after receipt by it of the prescribed notice of the death, paid $5,000, which was accepted by the beneficiary without prejudice to her claim, asserted by the suit, of the right to recover an additional $5,000 under the above-quoted "double indemnity" provision of the policy.

[1] The claim asserted by the suit was duly resisted. In the trial uncontroverted evidence was adduced to the following effect: The insured entered the United States army in the summer of 1917. He then was within the draft age and was subject to draft, but volunteered before he was called. His name was among those first drawn. He went to France with his command in the spring of 1918. He was killed in the Argonne-Meuse battle in France on October 14, 1918, the first day of that battle. He was first lieutenant of his company and was leader of a platoon engaged in that battle. In pursuance of orders he led his platoon in an advance against the Germans, who were retreating; his company being part of a force, consisting of several regiments, which was engaged in that advance. When that advance movement had been in progress about 30 minutes, the force engaged in it was held up by a German machine gun barrage. At the place where the troops of which the platoon led by Lieut. Allison was a part were so held up, German shells were being thrown over, and Allied shells, fired from a point several miles in the rear, were falling short and exploding. At that time and place, and just after Lieut. Allison had got down in a little shell hole, a piece of shrapnel from an exploded shell struck him just back of the top of his head, went through the steel helmet he had on and into his brain, killing him instantly. There was no way of determining whether it was an Allied shell or a German shell that caused his death. The policy was in force when the insured's death so occurred, all premiums having been duly paid.

The insurer excepted to the action of the court in directing a verdict in favor of the plaintiff, and to the refusal to give requested written charges, among them the following:

"Unless the jury are reasonably satisfied from the evidence that Lieut. Allison was killed by a shell fired by the American forces, you cannot find for the plaintiff."

"The court charges the jury that, even though the plaintiff's son may have been killed by an American shell, yet if he met his death while engaged in battle with the Germans, the defendant company would not be liable."

The policy contains no provision whereby the liability incurred by the insurer is affected as a result of the insured becoming a soldier or engaging in an occupation more hazardous than the one in which he was engaged at the time the policy was issued. The only exception stated in the double indemnity provision is expressed by the words, "murder or suicide, sane or insane, not included." A death of the insured, not due to murder or suicide, is covered by that provision, if it resulted from bodily injury, sustained and effected directly through external, violent, and accidental means, exclusively and independently

of all other causes, and occurred within 90 days from the date of the accident. It is not open to question that the bodily injury which resulted in the insured's death was sustained directly through external and violent means, exclusively and independently of all other causes. If those means were accidental within the meaning of that provision, the death of the insured so occurred as to be within the terms of the policy upon which the claim asserted by the suit is based.

If it was by chance, without his design, consent, or co-operation, that the insured in the policy sued on was the victim of the external and violent means whereby his death was caused, those means are to be regarded as accidental, so far as he was concerned. United States Mutual Accident Ass'n v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60; Equitable Accident Ins. Co. v. Osborn, 90 Ala. 201, 9 South. 869, 13 L. R. A. 267; Campbell v. Fidelity & Casualty Co., 109 Ky. 661, 60 S. W. 492; Western Commercial Travelers Ass'n v. Smith, 85 Fed. 401, 29 C. C. A. 223, 40 L. R. A. 653; Standard Life & Accident Ins. Co. v. Schmaltz, 66 Ark. 588, 53 S. W. 49, 74 Am. St. Rep. 112. Such means are none the less accidental, so far as the insured is concerned, because they were put into operation by the voluntary act of another. 4 Cooley's Briefs on Insurance, 3159. Nor are such means made other than accidental by the circumstance that one or more persons engaged or employed as the insured was when he was killed were likely to be injured or killed by such means.

[2] Experience convincingly teaches that the hazards incident to many lawful employments other than war are such that it is to be expected that some of those engaged therein will be injured or killed. If an accident policy contains no provision excepting such hazards, and by chance, without the insured's design, consent, or co-operation, he is injured or killed as a result of a hazard incident to his occupation, his injury or death properly may be said to have been caused by accidental means. While it was to be expected that some of the soldiers' engaged in the military operation in which the insured was engaged when he was killed would be injured or killed, it is not to be denied that it was by chance that Lieut. Allison's person was in the path of the piece of shrapnel which caused his death. He would not have been injured or killed by that missile, but for the accidental or fortuitous circumstance that his person happened to be in its path. It was chance which determined that he was the soldier who was the victim of that stray missile.

[3] Though the means whereby a personal injury or death is caused were put into operation with the design or intention of killing or injuring one or more persons, if chance determines what particular person or persons are injured or killed in consequence of the use of those means, as to a person so injured or killed, without his fault, consent, or co-operation, such means are to be regarded as accidental within the meaning of the provision in question. Of the millions of Americans who served as soldiers in the war with Germany, comparatively few were wounded or killed in battle. Battle casualty lists, in great measure at least, disclosed results of the chances of war. Whether the injury or death of a particular soldier is a consequence of

his participation in a battle ordinarily depends on his happening to be or not to be in the path of a missile of war. It cannot well be said that the wounding or killing of any particular soldier belonging to a force going into battle is so far a natural and to be expected consequence of his so being exposed to danger as to prevent a casualty happening to him properly being regarded as within the category of accidents.

We are of the opinion that the evidence adduced required the conclusion that the death of Lieut. Allison was a consequence of an unforeseen and unforeseeable combination of fortuitous circumstances, and that the means whereby his death was effected were accidental within the meaning of the above set out provision of the policy. This conclusion is supported by the decision rendered in the case of Interstate Business Men's Accident Association v. Lester, 257 Fed. 225, 168 C. C. A. 309. Whether it was an American or a German shell which exploded near where Lieut. Allison happened then to be, it was a matter of chance or accident that it was he who was struck by a piece of it, or that any one would be struck by it. In our opinion the court did not err in ruling as it did.

The judgment is affirmed.