EDITH S. HATFIELD, Appellee, v. IOWA STATE TRAVELING MEN'S ASSOCIATION, Appellant.

**APPEAL AND ERROR:** Parties Entitled to Allege Error—Invited
1 Error—Requesting Instructions—Effect. Requesting instructions on disputed questions of fact precludes subsequent contention, by the one requesting, that the evidence is insufficient to support the verdict returned.

**INSURANCE:** Accident Insurance—Death from Accident (?) or
2 Disease (?)—Evidence. Evidence reviewed on the sharply defined issue whether deceased died (a) from disease, or (b) from accident alone, and held to present a jury question, notwithstanding defendant's greater number of witnesses.

**INSURANCE:** Accident Insurance—Cause of Death—Direct Versus
3 Expert Testimony. Evidence reviewed, and held that the manner in which one was injured, and what happened to the injured party immediately thereafter, as described by an interested eyewitness, made a prima-facie showing of death *from accident,* which was not overcome, as a matter of law, by a strong array of adverse expert testimony tending to show death *from disease.*

**INSURANCE:** Accident Insurance—"Accident" Defined. An "accident," within the meaning of accident insurance, is an event happening without any human agency, or, if happening through human agency, an event which, under the circumstances, is unusual and unexpected to the person to whom it happened. Evidence reviewed, and held to show an accident.

**APPEAL AND ERROR:** Harmless Error—Rejected Testimony Otherwise Received. Error in improperly excluding testimony is rendered harmless by the subsequent reception of the same.

*Appeal from Polk District Court.*—WM. H. McHENRY and CHARLES A. DUDLEY, Judges.

SATURDAY, JANUARY 20, 1917.

REHEARING DENIED TUESDAY, MAY 22, 1917.

ACTION at law to recover on a policy or benefit certificate insuring William J. Hatfield, while a member of said association in good standing, against injury through external, violent and accidental means, which injury shall, "independently of all other causes, result in death within 90 days from said injury." The defendant contested the claim, and on trial to a jury there was a verdict for plaintiff. From the judgment rendered on the verdict, the defendant appeals.—*Affirmed.*

*Sullivan & Sullivan,* for appellant.

*Dowell, McLennon & Zeuch, T. B. Hanley* and *Parker, Parrish & Miller,* for appellee.

WEAVER, J.—William J. Hatfield, a resident of Portland, Oregon, died at that place on June 14, 1913. At the time of his death, he held three several policies or certificates of accident insurance, issued respectively by the Iowa State Traveling Men's Association (defendant herein), The Fidelity & Casualty Company of New York, and Travelers Protective Association of America. The widow of Hatfield, in her own right and as administrator of her husband's estate, made claim against each of these three

companies or associations upon their several contracts of insurance, on the theory that his death was occasioned by accidental means, within the terms of such contracts. These claims being denied, separate suits were brought in the district court of Polk County for their collection. In each case, the plaintiff recovered judgment, and in each, an appeal was taken to this court. The cases have been prosecuted and defended by the same counsel throughout, and, subject to some minor exceptions, the issues presented are identical. The principal defense relied upon in all of them is that the death of Hatfield was not caused by accidental means, within the terms of the contract, but that he died from disease or bodily infirmity. We have at this term considered the appeal in the case against the Fidelity & Casualty Company, and reached a conclusion affirming the judgment of the trial court. In that opinion we have stated, as far as seems to be necessary, the substance of the testimony and of the record of the trial, and shall not extend this opinion for their repetition. We have also there given consideration to the several legal propositions advanced by counsel, and, so far as the same questions are raised in this case, that opinion must be considered as governing the result in this. Other features not common to the cases against the Fidelity & Casualty Company and against this defendant will now be noted.

I. In the case at bar, defendant admitted the membership of Hatfield in good standing at the date of his death, that plaintiff is his beneficiary, and that due notice and proofs of loss were given, thus in effect limiting the dispute between the parties to the actual cause of death of the insured. Appellant did not ask or submit special findings for answer by the jury, but in other respects, the conduct of the defense was like that to which we have referred in disposing of the case first

1. APPEAL AND ER-
ROR: parties en-
titled to allege er-
ror: invited er-
ror: requesting
instructions:
effect.

mentioned.  Counsel for the defense did, however, present and ask to have submitted to the jury some fifteen different instructions upon the law applicable to the issues of fact, and many of the propositions so stated were, in words or in substance, incorporated into the charge given by the court, and, this being so, we think appellant is not at liberty to say that the questions which it thus aided in submitting as matters of fact for the jury are, nevertheless, matters of law, and should be so considered on this appeal.

We will also say, as suggested in the

2. INSURANCE: accident insurance: death from accident (?) or disease (?): evidence.

opinion referred to, that, independently of the rule just applied, we think the testimony concerning the death of the insured and the cause thereof was such as to make necessary its submission to the jury.  In addition to the testimony concerning the autopsy which was offered in each case, both parties on this trial introduced additional medical witnesses, who expressed their opinions founded upon hypothetical questions embodying an assumption of facts claimed to have been developed from other sources of evidence, or facts admitted or proved.  As is not unusual, the experts offered by the defendant express their conviction that the disclosures made by the autopsy and the statements made in the hypothesis submitted to them indicate death from disease or abnormal internal conditions, while plaintiff's experts are no less certain, not only that a fall by insured upon the handle of the screwdriver, as described by Mrs. Hatfield, could produce death, but also that, if the fall occurred in the manner described, it did in fact cause the death.  It is true that the greater number of experts support the defendant's theory, but it is not within the province of the court to hold that the preponderance of the evidence is with the greater number of witnesses.

It must not be overlooked that the proof

**3. INSURANCE: accident insurance: cause of death: direct versus expert testimony.** of the cause of death in these cases does not rest solely on the opinion of experts. The wife was an eyewitness to the occurrences to which she testifies. Though interested in the result, she was a competent witness, and the jury were entitled to give full weight and credit to her testimony if they found it credible. Had no expert testimony been produced, her evidence alone would have been sufficient' to sustain a verdict in her favor that her husband died from injury produced by external, violent and accidental means, independent of all other causes. Whether such a prima-facie case has been successfully met and overcome by the volume of opinion evidence offered, is a question of fact to be submitted to the jury, with appropriate instructions.

The case does not, as counsel argue,

**4. INSURANCE: accident insurance: "accident" defined.** fall within the rule applied in *Lehman v. Great Western Acc. Assn.*, 155 Iowa 737; *Feder v. Iowa S. T. M. Assn.*, 107 Iowa 538; *Smouse v. Iowa S. T. M. Assn.*, 118 Iowa 436; and others of that class. Had the evidence shown simply that Hatfield died suddenly while using the screwdriver in the ordinary way, or that, while so occupied in the ordinary way, he suddenly collapsed without any intervening unlooked-for or unexpected cause bringing it about, then these cases could well be cited as having an important bearing upon the issue. But such is not the showing here made. In support of the verdict, we must give the testimony in plaintiff's favor the most favorable construction of which it is reasonably capable. The jury could have found that, on the day in question, Hatfield was in good health, was actively engaged in the care of his home and family, moving about both in and out of doors. He had brought the material and tools to attach a board or bottom upon a small box standing on the floor, and was using a ratchet

screwdriver for that purpose. Leaning over the box, and grasping the screwdriver with both hands, he pressed it downwards with considerable force, when the box tipped, with the result that the driver slipped from the screw head, causing him to fall forward in such a manner that, as the point of the driver struck the floor, his breast came down with the full weight of his body upon the upper end or handle of the tool. He instantly gave evidence of being very seriously injured, and died within a few hours. Here was clearly an intervening cause which differentiates this case from those referred to. He intended to use the screwdriver and did attempt its use, but he did *not* intend that the box should tip over, or that he should thereby lose his balance and fall. It was not his voluntary act which caused his disaster, but the mishap, the mischance, the unexpected and unintended fall, bringing his body down upon the upright implement in his hands. This distinction is carefully pointed out in the cases cited by appellant. For example, in the *Lehman* case, the court distinctly calls attention to the fact that the record shows "no evidence whatever of any slipping or falling or of any strain of the muscles other than the intentional strain put upon them in the voluntary and intentional act of bowling." So, in the *Feder* case, the court again is careful to note that "there is no evidence that he fell, slipped, lost his balance * * * or that anything was done or occurred which he had not foreseen and planned, except the rupture of the artery." This distinction, which counsel wholly overlook, makes all the difference between a case for the jury and one which is not. There is here the evidence of a slip, a fall, a loss of balance, an unforeseen occurrence, which comes within every definition of accident known to the books.

II. Counsel complain of an alleged

5. APPEAL AND ER-error in the ruling of the trial court exclud-
ROR: harmless er-
ror: rejected tes-
timony otherwiseing a certain affidavit by the attending
received.   physician of the insured. It appears, how-

ever, that the physician was called by the defendant on its own behalf, and fully examined concerning not only what he learned or knew from his treatment of the insured, but also concerning the autopsy in which he took part. Appellant thus had the benefit of the witness's knowledge, as well as his expert opinion, and the ruling was without prejudice. Moreover, the evidence as offered was, to say the least, of very doubtful competency.

III. All other points made in argument are sufficiently covered by what we have said in the case against the Fidelity & Casualty Company.

No reversible error has been shown, and the judgment of the district court is—*Affirmed.*

GAYNOR, C. J., EVANS and PRESTON, JJ., concur.