Trau, Appellant, v. The Preferred Accident Ins. Co. of N. Y.

Argued October 14, 1929. Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*A. Carson Simpson,* and with him *Charles M. Willits,* for appellant.—The case falls within the principle of those relating to external, violent and accidental means: Eby v. Travelers Ins. Co., 258 Pa. 525; Bloom v. Brotherhood Accident Co., 85 Pa. Superior Ct. 398; Lane v. Horn & Hardart Baking Co., 261 Pa. 329; Paul v. Insurance Co., 112 N. Y. 472; Western Commercial Traveler's Assn. v. Smith, 85 Fed. 401.

*Harry S. Ambler, Jr.,* and with him *Harry A. Talbot* and *Frank R. Ambler,* for appellee.—The injury was not caused by accidental means: Semancik v. Continental Casualty Co., 56 Pa. Superior Ct. 392; Southard v. Railway Passengers Assurance Co., 34 Conn. 574; Shanberg v. Fidelity & Casualty Co. of New York, 158 Federal Reporter 1; Maryland Casualty Co. v. Spitz, 246 Federal Reporter 817.

OPINION BY KELLER, J., January 29, 1930:

The defendant company's policy insured the plaintiff "against the effect of bodily injury ....... caused solely by external, violent and accidental means." While it was in force, plaintiff strapped a trunk. As he was pulling the strap tight he felt a sliding or pinching sensation in his left groin, which, a day or two later, he found to have developed into a rupture, requiring an operation.

He brought suit on the policy and recovered a verdict. The court subsequently entered judgment for

the defendant non obstante veredicto, and the plaintiff appealed.

In Pollock v. U. S. Accident Assn., 102 Pa. 230, our Supreme Court in construing the same phrase said: "The object of the company is to insure against bodily injuries produced in a certain manner specified, that is, caused by external, violent and accidental means. Not injuries caused by any one of these means, but by all of them combined." Notwithstanding the suggestion of appellant's counsel that the Supreme Court in Pickett v. Pacific Mut. Life Ins. Co., 144 Pa. 79, "felt it necessary to explain the peculiar language used in that [Pollock] opinion," we do not understand that it has, in any way, weakened the force of its statement that a policy insuring against bodily injury caused by external, violent and accidental means will not be held to indemnify against injuries caused by only one of these means, but is limited to injuries caused by all of them combined; the adjectives modifying "means" are not used disjunctively, but conjunctively; and the bodily injuries relied on must be shown to have been caused by external means, by violent means, and by accidental means. We have no right to refine away any of these words in the policy. They are used in the sense ordinarily given them in this connection. "External" as used in the policy is equivalent to "outward;" "violent" to "not natural, abnormal,"—as a "violent death;" "accidental" to "happening by chance or unexpectedly." To secure indemnity under the policy the injury must have been caused by *means* which were outward, not natural, and which happened by chance or unexpectedly. Did the plaintiff's injury come within these requirements?

It may be admitted, for the purposes of this case, that the injury was an accidental one, that is, that it happened by chance or unexpectedly; but that is not the test. Was it caused by *means* which were external,

not natural, and which happened by chance or unexpectedly? There is no decision in the appellate courts of this Commonwealth squarely on the point, and the decisions in other jurisdictions are not uniform, but we think the weight of authority and the sounder reasoning are opposed to the appellant's claim.

It is established that the exciting cause of an acquired, as distinguished from a congenital, hernia is generally some strain or over-exertion, "as in lifting a heavy weight, jumping off a high wall, straining (as in difficult micturition), constipation, or excessive coughing. The pressure of the diaphragm above and the abdominal wall in front acting on the abdominal viscera causes a protrusion at the weakest point": 13 Ency. Brit. p. 372 (11th Ed.). The learned counsel for the appellant, in his able and interesting argument, admitted that the hernia was not caused by the trunk strap, or even by the process of strapping the trunk, apart from the internal strain which the insured placed on his abdominal muscles while engaged in that chore. He did not slip or fall or do anything that he had not intended to do, but the results were more than he expected. He did intend to tense his muscles, but he did not purpose doing so to such a degree as to cause a hernia. To us the situation seems no different than it would have been had the insured suffered a hernia while straining in micturition or at stool, without any intervening circumstances. There he would have intended to strain the abdominal muscles in furtherance of his purpose, but not to the extent of causing a rupture. The hernia would have been accidental but it would not have been caused by external and accidental means. The distinction was drawn by the late Judge HENDERSON in Semancik v. Continental Casualty Co., 56 Pa. Superior Ct. 392, where recovery was denied under a similar policy for death by sunstroke, where no concurring accident was shown. He said: "Volun-

tary exposure to heat or cold with a knowledge of the existing conditions, and action by the insured in an intended and ordinary manner under such circumstances, resulting in bodily injury does not present a state of facts on which the court can with confidence declare that such injury was effected by accidental means although the injury was accidental in that it was not designed or anticipated." The same thought was well expressed by the Circuit Court of Appeals, 5th Circuit, in Carswell v. Railway Mail Assn., 8 Fed. (2d) 612, where the insured died from dilation of the heart caused by his exertion in cranking an automobile: "Where one voluntarily undergoes physical exertion and nothing unexpected or unintended happens while he is doing so, the fact that such exertion unintentionally and unexpectedly causes injury, does not make the *means* whereby such injury is caused, namely, the voluntary exertion, accidental. The physical injury caused by voluntary exertion or strain, which is unaccompanied by anything which is involuntary, unforseen and unusual is not a result of 'external, violent and accidental means' within the meaning of the instrument sued on." Judge JOHN B. McPHERSON, when circuit judge of the 3d Circuit, Circuit Court of Appeals, stated the general principle in somewhat different terms, inadvertently confusing "accidental injury" with "injury by accidental means," in Preferred Accident Ins. Co. v. Patterson, 213 Fed. 597, as follows: "We agree that when a man is injured while doing merely what he intends to do, he is not injured by an accident, unless the course of his action has been interrupted or deflected by some unforeseen and unintended happening. To illustrate from the facts before us: Since the deceased was attempting to start the engine of his car by turning the crank whatever injury he might sustain from the ordinary strain of that operation, would prop-

erly be regarded as a result of what he intended to do, and therefore would not be regarded as accidental. But we can hardly suppose that he intended to slip and fall in the course of the operation, and therefore if he did slip and fall and sustained injury as the direct result thereof, the happening would be unforeseen and unintended and the injury would be accidental."

So in this case, had the insured while strapping the trunk slipped and fallen, causing the hernia in question, the injury would have been caused by external, violent and accidental means; but when, as here, the operation of strapping the trunk is not interrupted or deflected by some outward happening, but in the exercise of usual and ordinary force results in an unexpected internal strain producing rupture, the *occurrence* though accidental would not amount to any injury caused by *external and accidental means*. "A means is not accidental when employed intentionally, though it produces a result not expected or intended": Maryland Casualty Co. v. Spitz, 246 Fed. 817, 818 (JOHN B. McPHERSON, J.). See also Hesse v. Travelers Ins. Co., 299 Pa. 125.

In the review of the authorities following we shall not include deaths by accidental drowning, by poison accidentally taken, by accidental inhalation of gas, or by snake bite, for all of them come squarely within the combination of external, violent and accidental means. The water, poison, gas, or snake venom causing death or injury were all external or outward means, though their injurious effect may have been internal. The meaning of the policy is that the *means which caused the injury* must be external—not that the injury must be external: American Accident Co. v. Reigart, 23 S. W. 191, 192 (Ky.). They were likewise violent (not natural) and accidental. The same may be said of death following a fit of violent coughing and choking

induced by toothbrush bristles lodging in one's throat, (Eby v. Traveler's Ins. Co., 258 Pa. 525).

In the following cases cited by appellant a recovery was allowed under the policy:

Hamlyn v. Crown Accident Ins. Co., L. R. (1893) Q. B. 1, where in stooping to pick up a marble dropped by a child the insured dislocated the cartilage of his knee. Lord Esher, M. R. said: "The word 'external' is that which caused me most doubt, but I feel sure that in this policy, looking as we are bound to, at the rest of the policy, and the things that are excepted from it, the expression must be taken to mean the antithesis of 'internal.' If the injury had happened by reason of something internal it would not be within the policy; but that is not the case, and I think we must say that because the cause of the injury was not internal it must have been external."

Western Commercial Travelers Ass'n v. Smith, 85 Fed. 401—Blood poisoning following an abrasion of the skin of a toe caused by wearing a new shoe—a distinctly external, abnormal and accidental means.

North American Life & Accident Ins. Co. v. Burroughs, 69 Pa. 43—Death following peritoneal inflammation resulting from a blow to the abdomen caused by the handle of the insured's pitchfork slipping through his hands and striking him on the abdomen—a clear case of injury caused by external, violent and accidental means.

McCarthy v. Travelers Ins. Co., Fed. Cas. No. 8682, where death resulted from the rupture of a blood vessel, caused by swinging Indian clubs for exercise; but in that case the court expressly charged the jury that to justify a recovery they had to find that "there occurred some unforeseen or unexpected circumstance which interfered with or obstructed the usual course of such exercise and ...... thereby produced an involuntary movement, strain or wrenching, by means of

which the injury was occasioned;" that "if he voluntarily used [the clubs] in the ordinary way for taking such exercise, without the occurrence of any unusual circumstance interrupting or interfering with such use, or causing any unforeseen, accidental or involuntary movement of the body, and in such use of the clubs there occurred the rupture of a blood vessel and consequent injury as claimed, I do not think it could be said that the means through which the injury was effected were accidental."

Miller v. Fidelity & Casualty Co., 97 Fed. 836, where the insured died from eating certain hard pointed and resistant substances of food which perforated his intestinal canal. Here, again, the means were clearly external.

Atlantic Accident Ass'n v. Alexander, 104 Ga. 709, 30 S. E. 939, where the insured, a blacksmith, in using a heavy sledge hammer struck a slanting blow and suddenly felt a severe pain in the lower abdomen, which proved to be a rupture.

McGlinchy v. Fidelity & Casualty Co., 14 Atl. 13 (Me.) where the insured died from an internal strain resulting from the extra exertion used in restraining a runaway horse, which had taken fright at a passing load of hides.

In the following cases, under somewhat similar circumstances, a recovery was denied:

Scarr v. General Accident Assurance Corp. L. R. (1905) 1 K. B. 387, where death was due to dilation of the heart resulting from the insured's exertion in ejecting a drunken man from his master's premises. BRAY, J., said: "The injury to the heart, which I assume to be bodily injury, seems to me to have been caused by the violent exertion, and the violent exertion was intended and not accidental. There was no slip or fall or blow. He intended to push and pull, and he pushed and pulled."

Hastings v. Traveler's Ins. Co., 190 Fed. 258 (1911), dilation of the heart following the raising and lowering of the body by the use of the hands and arms alone, while sitting in a chair.

Maryland Casualty Co. v. Spitz, 246 Fed. 817 (McPherson, J.). Insured rubbed scab on back of neck, breaking it and causing erysipelas, from which he died.

Shanberg v. Fidelity & Casualty Co., 158 Fed. 1. Death from over-exertion in carrying a heavy cellar door for several city blocks.

Fidelity & Casualty Co. v. Stacey, 143 Fed. 271. Blood poisoning following abrasion of knuckle in voluntary assault.

New Amsterdam Casualty Co. v. Jones, 110 N. E. 475 (Ohio, 1914)—dilation of heart following voluntary taking of cold bath.

Husbands v. Indiana Traveler's Acc. Assn., 133 N. E. 130 (Ind. 1921)—rupture of a blood vessel in the lung while deceased was shaking a furnace grate in the usual way.

Schmid v. Indiana Traveler's Acc. Assn., 85 N. E. 1032 (Ind. App. 1908)—paralysis of heart following the climbing of the steps of a hotel in a high altitude while carrying two heavy satchels.

Fane v. Assn. Ry. Mail Clerks, 188 N. Y. Supp. 222 —Hernia from lifting heavy mail sack.

Niskern v. United Brotherhood, etc., 87 N. Y. Supp. 640. Rupture of blood vessel from over-exertion in lifting heavy timber.

Appel v. Aetna Life Ins. Co., 83 N. Y. Supp. 238. Appendicitis due to regular movement of the psoas muscle while riding bicycle.

Rock v. Travelers Ins. Co., 156 Pac. 1029 (Cal.). Dilation of heart following insured's carrying of a heavy burial casket, while acting as pall bearer, but without any fall or other accident.

Ogilvie v. Aetna Life Ins. Co., 189 Cal. 406, 209 Pac. 26. Rupture of heart from strain while plowing.

Olinsky v. Ry. Mail Assn., 182 Cal. 669, 189 Pac. 835. Hemorrhage while swimming against strong current.

Lehman v. Accident Assn., 155 Iowa 737, 133 N. W. 752. Appendicitis as a result of a strain received while bowling.

Clarkson v. Union Mut. Co., 201 Iowa 1249, 207 N. W. 132. Sprain in back received from lifting heavy log.

Feder v. Iowa State Traveling Men's Assn., 78 N. W. 252 (Iowa, 1899). Rupture of an artery while standing on a chair and reaching out to close a window shutter.

Smouse v. Iowa State Traveling Men's Assn., 92 N. W. 53 (Iowa, 1902). Rupture of a blood vessel due to a sudden strain while taking off a night shirt.

Cobb v. Accident Assn., 96 Ga. 818, 22 S. E. 976. Injury to eyesight from strain in carrying heavy baggage.

Pledger v. Business Men's Accident Assn., 197 S. W. 889 (Tex. Civ. App. 1917), where the insured suffered a rupture of the heart caused by lifting a heavy cotton bale. This case was reversed by the Supreme Court of Texas in 228 S. W. 113, but not because of any disagreement with the Court of Civil Appeals as to its construction of the phrase ''external, violent and accidental means'' (see p. 113); but because it held the case should have been governed by the wording of the *policy* or certificate, insuring against *''accidental death,''* rather than of the *by-laws* of the association, which provided for benefits in case of death or injury caused by *''external, violent and accidental means.''* The Supreme Court in reversing said the ''contingency insured against was accidental death rather than death caused by accidental means ...... Death caused by accidental means is an accidental death, but an accidental

death may or may not be the result of accidental means," p. 113.

We are of the opinion that in the circumstances here present, the insured did not prove that his injury was caused solely by external, violent and accidental means, and therefore did not bring himself within the provisions of the policy so as to justify a recovery.

The judgment is affirmed.